# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **STEVE E. BODINE #701899** | **CASE NO.  3:19-CV-00955 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **STATE OF LOUISIANA** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT & RECOMMENDATION

Petitioner Steve E. Bodine, a prisoner in the custody of Louisiana's Department of Corrections proceeding pro se, filed this Petition for Writ of Habeas Corpus on approximately July 15, 2019, under Title 28, United States Code, Section 2254.  [doc. # 1].  Petitioner attacks his aggravated rape conviction and the life imprisonment sentence imposed by the Third Judicial District Court, Union Parish.[1]  For reasons assigned below, **IT IS RECOMMENDED** that the Court **DENY** Petitioner's claims and **DISMISS** his petition, **WITH PREJUDICE**.

### Background

The Louisiana Court of Appeals for the Second Circuit recounted the underlying state court procedural history as follows:

> On September 9, 2013, Steve Bodine ("Bodine") was charged by bill of indictment for the aggravated rape of M.B., a victim under the age of 13 who is also Bodine's granddaughter. The offense was alleged to have occurred during 2005 and 2007. The [D]efendant pled not guilty. Following a motion *in limine*, the trial court ruled that four other individuals would be permitted to testify that Bodine sexually assaulted them when they were minors, pursuant to La. C.E. art. 412.2. The trial court further ruled that Lois Bodine, Bodine's wife, would have to testify if called because the nature of the charges against Bodine statutorily waived spousal privilege.
>
> A jury trial began on July 27, 2015. The victim, M.B., testified that Bodine forced her to have sex with him on multiple occasions while she visited him at his home when she was between the ages of 8 and 10 years old. Three other women

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under Title 28, United States Code, Section 636, and the standing orders of the Court.

testified that Bodine sexually assaulted them before the age of 10 years old. On July 29, 2015, the jury found the defendant guilty as charged of aggravated rape. Bodine filed a motion for new trial, which was denied by the trial court following a hearing on August 10, 2015. On August 10, 2015, the trial court sentenced the defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.

On October 24, 2016, Bodine filed a motion for appeal, which was denied by the trial court as untimely. On May 15, 2017, Bodine filed an application for post-conviction relief, arguing that his trial counsel was ineffective. On August 3, 2017, following an application for supervisory review, this Court remanded Bodine's application for post-conviction relief to the trial court for consideration as a motion for out-of-time appeal. An out-of-time appeal was granted by the trial court on October 17, 2017.

The Louisiana Appellate Project was appointed to represent the [D]efendant on appeal. This appeal followed, and the [D]efendant's appellate counsel has filed an *Anders* brief and a motion to withdraw, alleging that he could find no nonfrivolous issues to raise on appeal. *See Anders v. California*, *supra*; *State v. Jyles*, 96-2669 (La. 12/12/97), 704 So.2d 241; *State v. Mouton*, 95-0981 (La. 4/28/95), 653 So.2d 1176; and *State v. Benjamin*, 573 So.2d 528 (La. App. 4 Cir. 1990). Defense counsel also verified that he mailed copies of the motion to withdraw and his brief to the defendant, in accordance with *Anders*, *Jyles*, *Mouton*, and *Benjamin*, *supra*. Additionally, the state filed a brief with this Court agreeing that there are no nonfrivolous issues to raise on appeal.

On April 27, 2018, the defendant requested to review the appellate record and leave to file a pro se brief. On May 23, 2018, this Court issued an order holding the motion to withdraw in abeyance and extended the pro se briefing deadline to June 22, 2018. Because the record is confidential pursuant to La. R.S. 46:1844(W), a redacted version of the record was sent to Bodine on May 23, 2018. Bodine timely filed a pro se brief.

*State v. Bodine*, 52,205 (La. App. 2 Cir. 9/26/18), 257 So.3d 249, 251–52 (explanatory footnotes omitted).

On September 26, 2018, the appellate court affirmed Petitioner's conviction and sentence. *Id.* at 255. Petitioner moved for rehearing the next day, and, on November 8, 2018, the appellate court denied the motion. [doc. #s 1, p. 4; 1-2, p. 48]. On March 25, 2019, the Supreme Court of Louisiana denied Petitioner's Application for Writ of Certiorari and/or Review. *State v. Bodine*, 2018-1756 (La. 3/25/19), 267 So. 3d 597. Petitioner does not indicate that he applied for certiorari before the United States Supreme Court.

In his original petition, Petitioner brought the following claims: (1) that his trial counsel rendered ineffective assistance (approximately ten permutations); (2) that his appellate counsel failed to communicate with him and failed to review the entire trial record; (3) that the trial judge knowingly appointed a mentally ill defense counsel; (4) that the trial judge joked, read a novel, wore a silly bow tie, laughed aloud, was inattentive, and went to his chambers without stopping the trial; (5) that the trial judge began attending the victim's church in 2015, but after sentencing Petitioner the judge returned to his original church; and (6) medical records, the victim's testimony, and photographs all demonstrate that Petitioner is innocent.  [doc. # 1].

On October 16, 2019, following a preliminary review, the Court determined that Petitioner did not exhaust all of his claims.[2]  [doc. # 9].  The Court instructed Petitioner to state whether he wished to (1) voluntarily dismiss his unexhausted claims and proceed with only the exhausted claims; (2) dismiss the entire proceeding without prejudice, exhaust the unexhausted claims, and then return to federal court; or (3) move to stay the petition, hold the proceeding in abeyance, and then attempt to return to state court and exhaust his unexhausted claims.  [doc. # 9].  On November 5, 2019, Petitioner chose the third option.  [doc. # 10].

---

[2] The Court found that Petitioner had not exhausted eight of his claims before all levels of state court (several of which are permutations of his ineffective assistance of counsel claim): (1) trial counsel lost Petitioner's exculpatory evidence, including pictures, medical records, and telephone recordings; (2) trial counsel would not allow Petitioner to testify; (3) trial counsel would not allow the town's mayor to testify; (4) trial counsel did not strike jurors who were specifically chosen to find Petitioner guilty "on any charge without evidence because they were friends with the alleged victim."; (5) trial counsel did not object to the trial judge reading a novel during trial and laughing aloud at the story, to the judge leaving the courtroom while trial was in progress without stopping the trial, or to the judge stating that he did not need to "hear what was being said [because] he already knew the outcome of the trial." (6) appellate counsel did not communicate with Petitioner and did not review the entire trial record; (7) the trial judge read a novel during trial, joked, laughed aloud, left the courtroom without stopping the trial, wore a silly bow tie, and was not attentive; and (8) the trial judge began attending the victim's church in 2015 and then, after sentencing Petitioner, the judge returned to his original church.  [doc. #9].

On November 8, 2019, the Court granted Petitioner's motion to stay subject to certain conditions. [doc. #11]. On April 29, 2021, the Court lifted the stay. [doc. #16].

On approximately June 25, 2021, Petitioner filed a purported "Addendum" to his petition, maintaining that he returned to state court and exhausted his once-unexhausted claims. [doc. #17].[3]

Upon review of the state court record, the undersigned determined that Petitioner's claim that his appellate counsel failed to communicate with him and failed to review the entire record remained unexhausted. [doc. #18]. On July 7, 2021, the undersigned recommended that the Court dismiss that claim. *Id.* On July 29, 2021, Judge Doughty adopted the undersigned's recommendation and dismissed the claim. [doc. #23].

On July 7, 2021, the undersigned also directed the Clerk to prepare summons and serve a copy of the petition on the Warden of David Wade Correctional Center, the Attorney General of the State of Louisiana, and the District Attorney for the Third Judicial District Court, Union Parish, where Petitioner was convicted and sentenced. [doc. #19]. The Court ordered Respondents, through the District Attorney, to file an answer to the petition; a memorandum brief of law in support of all issues raised in the answer; a certified copy of the state court record, including transcripts of all proceedings held in state courts; certified copies of all documents filed in

---

[3] According to the state court record, Petitioner filed an application for post-conviction relief on December 6, 2019, in the Third Judicial District Court, Union Parish, State of Louisiana. [doc. #17-1, pp. 1–22]. There, he sought relief as to all but one of his previously unexhausted claims. [doc. #18]. The state district court denied all of Petitioner's claims. [doc. #17, p. 33–34]. Petitioner sought writ with the Louisiana Second Circuit Court of Appeal, which was denied on June 17, 2020. *Id.* at 51. Petitioner applied for supervisory writ with the Louisiana Supreme Court, which the court denied on February 9, 2021, holding that Petitioner showed no lower court error and that his claims were fully litigated in accordance with Louisiana Code of Criminal Procedure Article 930.6, and, as such, the denial is final. *State v. Bodine*, 2018-1756 (La. 3/25/19), 267 So. 3d 597.

4

connection with any appeal; and certified copies or citations to all state court dispositions pertaining to the conviction under attack.  *Id.*

On August 27, 2021, Petitioner filed a notice of appeal as to the Court's dismissal of his claim that his appellate counsel failed to communicate with him and failed to review the entire record.  [doc. #25].  The Fifth Circuit dismissed the appeal for want of jurisdiction on March 17, 2022.  [doc. #48].

On February 22, 2022, Respondents, through the District Attorney for the Third Judicial District Court, filed their response to Petitioner's writ of habeas corpus.  [doc. #40].  Petitioner did not file a reply.

Accordingly, this matter is ripe.

## Discussion

I.    *Standard of Review*

*Habeas corpus* relief is available to a person who is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  Under Title 28, United States Code, Section 2254(d), this Court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).

A decision is "contrary to" clearly established federal law "'if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts.'" *Williams v. Taylor*, 529 U.S. 362, 413 (2000); s*ee also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied,* 532 U.S. 1039 (2001).  An "unreasonable application" of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable[.]" *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams,* 529 U.S. at 409–410) ("[W]e stressed in *Williams t*hat an unreasonable application is different from an incorrect one.")*.*

Section 2254(d)(2) also allows for habeas relief if the state court's decision "was based on an unreasonable determination of the facts" in light of the record before it.  The federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  "Instead, [Section] 2254(d)(2) requires that we accord the state trial court substantial deference."  *Id.* at 314.  However, the petitioner may overcome the presumption of correctness "by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing 28 U.S.C. § 2254(e)(1)).

II.    *Analysis of Claims*

In his initial complaint, Petitioner brought six claims in support of his petition.  [doc. #1]. The Court dismissed his claim that his appellate counsel failed to communicate with him and failed to review the entire record.  [docs. #18, 23].

In his amended petition, Petitioner brought the five remaining claims, but re-organized them as two claims, each with permutations: (1) that his trial counsel rendered ineffective

assistance (approximately ten permutations) and (2) that he was denied his right to a fair trial (approximately four permutations). The Court will consider each claim.[4]

    *a. Claim One: Ineffective Assistance of Counsel*

Petitioner contends that his trial counsel's representation fell below an objective standard of reasonableness in violation of his Sixth Amendment right to counsel by: (1) failing to present alleged exculpatory evidence of a taped voice mail left by the victim on Petitioner's answering machine; (2) failing to present alleged exculpatory evidence at trial, including pictures and medical documentation, allegedly due to counsel's health diagnoses; (3) counsel's being unaware of where he was and who he was talking to while visiting Petitioner at Union Parish Jail; (4) counsel allegedly becoming angry after Petitioner refused plea deals and threatening to work with the State to ensure Petitioner received a life sentence; (5) refusing to allow Petitioner to take the stand at trial or call "the town's Mayor" to testify on Petitioner's behalf; (6) not objecting to the selection of jurors who "were chosen specifically to find Petitioner guilty on charge [sic] without any evidence, because they were friends with the . . . victim"; (7) not objecting to trial judge's behavior during trial, including allegedly reading a book, laughing, and leaving the courtroom because he already knew the outcome; (8) failure to subject prosecution to the adversarial process because counsel did not remember where he was during trial; (9) immediately asking to be discharged after Petitioner was sentenced; and (10) filing Petitioner's appeal in the wrong judicial district due to advanced illness. [doc. #17, pp. 4–5].

---

[4] Petitioner's writ was filed within the one-year period of limitations established by the Anti-Terrorism and Effective Death Penalty Act (AEPA). Petitioner filed his motion to re-open these proceedings on April 21, 2021, within the one-year period after the Louisiana Supreme Court denied writs on his application for post-conviction relief on February 9, 2021. Accordingly, his claims are timely and may be considered on the merits.

The Sixth Amendment guarantee of effective assistance of counsel is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense.  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Petitioner's ineffective assistance of counsel claims are subject to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  First, Petitioner must show that counsel's performance was deficient: that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  However, a "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006).  Second, Petitioner must show that the deficient performance prejudiced the defense.  *Id.*  Counsel's performance prejudices a defendant when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

The "standard for attorney performance is that of reasonably effective assistance."  *Id.* (citing *Trapnell v. United States*, 725 F.2d 149, 151–52 (2d Cir. 1983)).  In each case, the convicted defendant claiming ineffective assistance "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  The court must then consider under "all the circumstances" whether the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id.*  "In making that determination, the court should keep in mind that counsel's function . . . is to make the adversarial testing process work," but recognize "that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.*

8

The state courts denied relief as to Petitioner's claims.[5]  Consequently, because his ineffective assistance counsel claims were adjudicated on the merits in state court, Petitioner must show that the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of *Strickland*, which is the clearly established federal law, as determined by the Supreme Court applicable to ineffective assistance claims." *Shelton v. Kent*, No. 1:20-cv-1025, 2021 WL 6285930, at *3 (W.D. La. Nov. 15, 2021) (quoting *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009) (internal quotation marks omitted)).

Thus, the Court must review Petitioner's ineffective assistance claims under a "doubly deferential" standard of *Strickland* and Section 2254(d). *Id.* (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017) ("Our federal habeas review of a state court's denial of an ineffective-assistance-of counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of [Section] 2254(d).")). Thus, "federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 578 U.S. 113, 117 (2016).

*1. Counsel's Failure to Present Taped Voice Mail*

Petitioner argues that trial counsel failed to present exculpatory evidence of a taped phone call that the victim, M.B., allegedly made to Petitioner's answering machine.  [doc. #17, p. 3]. During the alleged call, Petitioner claims that M.B. confessed to making false accusations on Facebook, so that Petitioner would be arrested.  *Id.*  Petitioner also says that M.B. apologized for trying to ruin his reputation.  *Id.*

---

[5] The state court procedural history is discussed above.  The Louisiana Second Circuit Court of Appeal found that Petitioner's ineffective assistance of counsel claims "[are] supported only by general, conclusory statements and allegations.  Such general statements and conclusory allegations are insufficient to prove a claim of ineffective assistance of counsel." *State v. Bodine*, 52,205 (La. App. 2 Cir. 9/26/18), 257 So.3d 249, 253.

Petitioner has failed to identify or present any evidence of a phone call that M.B. made to his answering machine.  The record contains a transcript of a phone call between M.B. and Petitioner; however, M.B. does not make any of the types of statements Petitioner alleges.  [doc. #44, p. 22].  Thus, Petitioner fails to show that evidence of such a call exists, much less that counsel failed to present it at trial.  Therefore, this claim fails.

2. *Counsel's Failure to Present Pictures and Medical Examinations*

Petitioner argues that trial counsel failed to present exculpatory evidence of pictures disputing M.B.'s testimony, as well as medical records related to Petitioner's alleged physical inability to perform any sexual activity.  [doc. #17, p. 3].  Petitioner alleges that counsel failed to present this evidence at trial because counsel had advanced stage Alzheimer's and Parkinson's diseases.  *Id.*

Petitioner has failed to identify or present any exculpatory evidence of pictures disputing M.B.'s testimony.  He offers no specifics as to what the "pictures" might show or how they would dispute M.B.'s testimony.  Similarly, Petitioner fails to identify which medical records demonstrate his inability to perform sexually.[6]  Finally, there is no evidence in the record to suggest that trial counsel's health rendered him incapable of providing professionally competent representation.[7]  Petitioner's conclusory allegations are insufficient to support his claim.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("This [c]ourt has made clear that conclusory

---

[6] Even if his medical records confirmed such issues, Petitioner states in his *Anders* brief that he can perform sexually with the use of medicine.  [doc. #46, p. 115].

[7] Trial counsel attempted to be relieved of his representation of Petitioner after Lois Bodine, Petitioner's wife, filed a bar complaint against him. [doc. #44, p. 68–69].  The trial court denied the motion.  *Id.*  There is no indication in the record that trial counsel's alleged health issues impacted his representation of Petitioner.

allegations of ineffective assistance of counsel do not raise a constitutional issue in federal habeas proceeding.").  Therefore, this claim fails.

### 3. *Counsel's Being Unaware While Visiting Petitioner in Jail*

Petitioner alleges that trial counsel visited him three or four times at Union Parish Jail. [doc. #17, p. 3].  During those visits, Petitioner claims that trial counsel was unable to remember who or where he was.  *Id.*  He also alleges that the Public Defender's Office was aware that trial counsel was being abused by other clients due to his "mental incompetence."  *Id.*

Again, Petitioner fails to identify any evidence in the record to support his claims. Conclusory allegations are insufficient.  *Miller*, 200 F.3d at 282.  Additionally, even if counsel made such a statement in anger, there is no evidence to show that he "worked" with the State.  At any rate, the trial judge, not the State, sentenced Petitioner.  Therefore, this claim fails.

### 4. *Counsel's Becoming Angry after Petitioner Refused Plea Deals*

Petitioner alleges that trial counsel presented three different plea deals to him, which he declined.  [doc. #17, p. 4].  Petitioner alleges that during their last meeting, trial counsel became angry and told Petitioner that if he declined the plea deal, counsel would work with the State to ensure that Petitioner received a life sentence.  *Id.*

Once again, Petitioner fails to identify any evidence in the record to support his claims. Conclusory allegations are insufficient.  *Miller*, 200 F.3d at 282.  Therefore, this claim fails.

### 5. *Counsel Not Allowing Petitioner or Town's Mayor to Testify*

Petitioner alleges that trial counsel refused to allow him to testify, even though he asked repeatedly to do so.  [doc. #17, p. 4].  "It cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."  *Rock v. Arkansas*, 383 U.S. 44, 49 (1987).  Notwithstanding that right, "a defendant who argues that his attorneys

prevented him from testifying must still satisfy the two prongs of *Strickland*." *United States v. Harris*, 408 F.3d 186, 192 (5th Cir. 2005).

Petitioner fails to satisfy either prong of *Strickland.* Petitioner offers no support in the record for his claim that trial counsel prevented him from testifying. *See Taylor v. Cain*, Civ. No. 7-3929, 2008 WL 4186883, at *8 (E.D. La. Sept. 10, 2008) (Petitioner failed to show ineffective assistance of counsel for refusing to allow defendant to testify where there was no evidence in the record to support Petitioner's claim). And even if trial counsel did prevent him from testifying, Petitioner gives no indication as to what his testimony would have been or how he was prejudiced by not taking the stand. *See Johnson v. Cain*, No. 12-cv-2997, 2016 WL 552635, at *10 (W.D. La. Jan. 26, 2016) (Even if counsel was deficient in not allowing defendant to testify, petitioner still failed to show prejudice) (citing *Preyor v. Stephens*, 537 F. App'x 412, 426 (5th Cir. 2013) (denying petitioner's claim that counsel refused to allow defendant to testify because claim was conclusory and did not show prejudice)).

Further, the state court determined that Petitioner's "general statements and conclusory allegations" were insufficient to support his claims. *Bodine*, 257 So.3d at 253. Accordingly, applying the "doubly deferential standard," giving both trial counsel and the state court the benefit of the doubt, Petitioner fails to meet his burden. *See Rhoades*, 852 F.3d at 434 (doubly deferential standard).

Petitioner also alleges that trial counsel refused to allow the town's mayor to testify on behalf of Petitioner—testimony which, according to Petitioner, would have exonerated him. [doc. #17, p. 4]. "Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." *Woodfox v. Cain*, 609 F.3d 774,

808 (5th Cir. 2010). Thus, petitioners making claims of ineffective assistance based on counsel's failure to call a witness must demonstrate prejudice by "naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the contents of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense." *Id.* (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009)) (internal quotation marks and punctuation omitted).

Petitioner offers no affidavits or other evidence in the record to show prejudice. He does not indicate what the mayor's testimony would have been—beyond the conclusory statement that the testimony would have "exonerated him"—or whether it would have been favorable to a particular defense. Accordingly, this claim also fails. *See Johnson v. Cain*, No. 12-cv-2997, 2016 WL 552635, at *8 (W.D. La. Jan. 26, 2016) (uncalled witnesses claim lacked merit where petitioner failed to provide affidavits or evidence in support).

6. *Counsel's Failure to Object to Selection of Jurors that were Friends with the Victim*

Petitioner alleges that trial counsel failed to object to the selection of jurors "chosen specifically to find Petitioner guilty on any charge without any evidence, because they were friends with the alleged victim." [doc. #17, p. 4].

"The Sixth Amendment guarantees an impartial jury, and the presence of a biased juror may require a new trial as a remedy." *Buckner v. Davis*, 945 F.3d 906, 910 (5th Cir. 2019) (quoting *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009)) (internal quotation marks omitted). "A juror is biased if his views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.* "On federal habeas review, state court findings concerning a juror's impartiality are factual determinations entitled to a presumption

of correctness." *Id.* (citing *Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *see also Virgil*, 446 F.3d at 610 ("Juror bias is a finding of fact.")).

There are two types of bias related to jury service—actual and implied bias. *Hatten*, 570 F.3d at 600. "Actual bias exists when the juror failed to answer a material question honestly on voir dire, and a correct response would have provided a valid basis for a challenge for cause." *Id.* Implied (or presumed) bias exists if a juror has one of a narrow class of relationships for which a juror can be presumed biased. *Id.*

As an initial matter, the undersigned would note that, once again, Petitioner's claims are conclusory—he provides no affidavits or evidence in the record in support of his claims that jurors were chosen "specifically to find [him] guilty," nor that any juror was friends with M.B.

However, out of an abundance of caution, a review of the voir dire transcript establishes that the trial judge was sensitive to any possible biases or conflicts of interest. The trial judge instructed the venire not to discuss the case with anyone, including the attorneys; the defendant; witnesses; court officials or law enforcement officers; or anyone else. [doc. #44, p. 160]. He also prohibited the venire from listening to the news or reading papers, or from searching the case on the internet. *Id.* And he informed all prospective jurors that the law requires they base their decision solely on the facts presented during the trial, and the law. *Id.*

Further, the trial judge subjected potential jurors to close questioning if there was any indication they might know a party, attorney, witness, or other individual associated with the case. This includes Juror Farris, whom Petitioner argued in his *Anders* brief was "good friends" with the victim's family. [doc. #46, p. 117]. Importantly, Farris raised her hand when the court asked the prospective jurors if any of them knew Lois Bodine, Petitioner's wife. [doc. #44, p. 181]. At that

14

time, the following exchange took place between Farris; the trial judge; and the prosecutor, Penya

Moses Fields:

| | |
|---|---|
| Ms. Fields: | Would your relationship with her – |
| Ms. Farris: | I don't know her that well. |
| The Court: | I'm going to ask you to speak up just a little bit because Ms. Fields is repeating your answer, but this is important[,] and I want to get this on record in your voice.  You did not consider yourself a close personal friend of Ms. Bodine? |
| Ms. Farris: | No, I did not. |
| The Court: | And we have already indicated that you do not know the defendant, himself; is that correct? |
| Ms. Farris: | That is correct. |
| The Court: | Would your knowledge of Ms. Bodine, the brief period of time that you knew her, have any effect on your ability to be fair and impartial in this case toward either the defendant or the State? |
| Ms. Farris: | --- |
| The Court: | All right. That's fair enough and that's a fair thing for any of you to do after you repeat a question.  You knew her a little bit or knew of her because she attended your church for a short period of time.  Would that keep you from being fair and impartial to either the defendant or the state? |
| Ms. Farris: | No. |
| The Court: | Or, to put it a shorter way, can you be fair and impartial by all sides in this case? |
| Ms. Farris: | I will be fair and impartial. |
| The Court: | Thank you. She said she could. |

[doc. #44, p. 182].

Ms. Farris clearly indicates that her knowledge of Ms. Bodine would not affect her ability

to consider the facts and the law fairly and impartially.  Ms. Farris's mere acquaintance or

association with Mrs. Bodine, who is Petitioner's wife and the victim's grandmother, is not

significant enough to presume bias. *Compare Hatten*, 570 F.3d at 603 (juror who purchased drugs

from victim and victim's father did not have a significant enough relationship to presume bias);

*and Andrews v. Collins*, 21 F.3d 612, 620–21 (5th Cir. 1994) (no implied bias where juror's

daughter had been married to the victim's grandson); *and Jones v. Butler*, 864 F.3d 348, 361–62

(5th Cir. 1988) (no implied bias where juror "had lived near the victim, knew her by sight, and had

15

visited the funeral home to view her body); *with Smith v. Phillips*, 455 U.S. 209, 222 (1982) (a juror cannot be impartial if he or she is "a close relative of one of the participants in the trial or in the criminal transaction" or "a witness or somehow involved in the [crime]."). Ms. Farris briefly attended church with Mrs. Bodine; there is no indication in the record that she was close friends with Mrs. Bodine or M.B., nor that she was a witness or had any knowledge of the facts of this case prior to trial. Accordingly, there is no implied bias.

There is also no actual bias. Petitioner provides no evidence in the record or affidavits to suggest that Ms. Farris or any other juror lied about his or her relationship with the victim or the victim's family.

Thus, on the record before this Court, and giving deference to the trial judge's credibility assessment of Ms. Farris, the undersigned finds that Petitioner has failed to prove bias. *See Logan v. Cain*, Civ. No. 11-2381, 2013 WL 3293659, at *13 (E.D. La. June 28, 2013) (giving deference to trial judge's determination that juror was credible in stating that she could be fair). And, because there was no bias, Petitioner has not met his burden under *Strickland* to show that trial counsel was deficient in failing to strike Ms. Farris or any other juror.[8] Therefore, this claim fails.

7. *Counsel's Failure to Object to Judge's Behavior During Trial*

---

[8] In his petition before this Court, Petitioner's only claims relating to jury selection are that jurors were "chosen specifically to find Petitioner guilty on any charge without any evidence, because they were friends with the alleged victim." [doc. #17, p. 4]. In his *Anders* brief, and in his post-conviction relief application in state court, Petitioner also made allegations related to statements made by potential jurors during voir dire related to the necessity of DNA evidence to convict someone, and about potential juror bias because one juror had two family members who had been raped and one juror had volunteered at a group for women with sexual problems. [doc. #46, pp. 116–17]. The Louisiana Second Circuit Court of Appeals denied these complaints as conclusory, noting that Petitioner provided no accompanying argument or support in the record. *Bodine*, 257 So.3d at 253–54. These claims are not explicitly raised in the body of the petition—nevertheless, even if they were, the undersigned would deny them as conclusory.

Petitioner argues that trial counsel did not object to the trial judge "reading a silly novel" and "laughing very loud at the story line." [doc. #17, p. 4]. He also alleges that trial counsel did not object when the trial judge left the courtroom during trial because he "didn't have to hear what was being said because he already knew the outcome of the trial." *Id.*

There is no evidence in the record to support Petitioner's claims about the trial judge. Conclusory allegations are insufficient. *Miller*, 200 F.3d at 282. Further, even if there was some evidence that the trial judge engaged in unprofessional behavior, Petitioner fails to show how he was prejudiced. Therefore, this claim fails.

*8. Counsel's Failure to Subject Prosecution to Adversarial Process*

Petitioner argues that trial counsel failed to subject the prosecution's case to meaningful adversarial testing. [doc. #17, p. 4]. In support of his claim, Petitioner says that trial counsel "did not even remember where he was or what he was supposed to be doing during trial." *Id.* Petitioner says he was convicted as a result. *Id.*

The trial transcript refutes Petitioner's claim. Trial counsel regularly lodged objections and questioned witnesses on examination and cross examination. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Petitioner provides no evidence to show that trial counsel's conduct undermined the proper functioning of the adversarial process. Therefore, this claim fails.

*9. Counsel's Asking to be Discharged Immediately after Sentencing*

Trial counsel requested to be discharged immediately after Petitioner was sentenced. The trial court granted counsel's request, which Petitioner claims violated his right to seek direct appeal. [doc. #17, p. 4–5].

As an initial matter, there is no constitutional right to a direct appeal. *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012). Nonetheless, even if counsel's discharge interfered with Petitioner's ability to seek a direct appeal, he did not suffer any prejudice—the state court granted Petitioner's request for an out-of-time direct appeal. *Bodine*, 257 So.3d at 251 ("An out-of-time appeal was granted by the trial court on October 17, 2017."). Thus, Petitioner does not show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Virgil*, 446 F.3d at 608. Therefore, this claim fails.

### 10. Counsel's Filing Petitioner's Appeal in the Wrong Judicial District

Petitioner argues that, after trial counsel was discharged, he filed a direct appeal on behalf of Petitioner in the wrong judicial district. [doc. #17, p. 5]. Petitioner attributes the alleged error to trial counsel's alleged medical diagnoses. *Id.* Petitioner also alleges that the appeal was filed fourteen months too late and denied by the trial court as untimely. *Id.*

As discussed above, even if trial counsel did commit an error in filing the direct appeal, Petitioner did not suffer any prejudice; the trial court ultimately granted petitioner an out-of-time appeal. Therefore, this claim fails.

### b. Claim Two: Right to Fair Trial

Petitioner contends that his conviction was obtained in violation of the "Fifth, Sixth, and Fourteenth Amendment right to due process where the Defendant was denied his right to a fair trial." Petitioner argues four permutations: (1) the trial judge knowingly appointed a mentally ill defense counsel to represent Petitioner; (2) the trial judge joked, read a novel, wore a silly bow tie, laughed aloud, was inattentive, and went to chambers without stopping the trial; (3) the trial judge began attending the victim's church in 2015, but returned to his original church after sentencing;

and (4) medical records, the victim's testimony, and photographs all demonstrate that petitioner is innocent.  [doc. #17, p. 5].

The Sixth Amendment guarantees "trial by an impartial jury" in federal criminal prosecutions.  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551 (1976).  "Because trial by jury in criminal cases is fundamental to the American scheme of justice, the Due Process Clause of the Fourteenth Amendment guarantees the same right in state criminal prosecutions."  *Id.* (quoting *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968) (internal quotation marks omitted)).

As the state court denied Petitioner's claims, this Court will determine whether Petitioner has met his burden to show that the state court's decision is "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).

1. *The Trial Judge Knowingly Appointed a Mentally Ill Defense Counsel*

Petitioner alleges that the trial judge appointed trial counsel knowing that he suffered from advanced stage Alzheimer's and Parkinson's disease.  [doc. # 17, p. 5].  The state court found that Bodine cited no evidence in the record to support his claim.  *Bodine*, 257 So.3d at 253.  Petitioner offers no argument that the trial court made an unreasonable determination.  Therefore, this claim fails.

2. *The Trial Judge Joked, Read a Novel, Wore a Silly Bow Tie, Laughed Aloud, Was Inattentive, and Went to Chambers Without Stopping Trial*

Petitioner argues that the trial judge often made "rude and unprofessional comments during trial."  [doc. #17, p. 6].  Petitioner alleges that the trial judge read a novel during trial, told the jury the book was funny, told the jury he did not need to pay attention to the trial because he already knew the outcome, and routinely went to chambers while the trial was ongoing.  *Id.*

19

"A federal court presented with a claim that the trial atmosphere was inherently prejudicial may only look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to the defendant's right to a fair trial." *Jones v. Davis*, 890 F.3d 559, 568 (5th Cir. 2018) (quoting *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986)) (internal quotation marks omitted).

Once again, Petitioner does not offer any evidence to substantiate his claim. And, upon review of the trial transcript, there is no evidence that the trial judge engaged in the conduct that Petitioner alleges. Conclusory allegations do not raise a constitutional issue in a habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). Therefore, this claim fails.

3. *The Trial Judge Began Attending the Victim's Church in 2015 and then Returned to his Original Church After Sentencing*

Petitioner alleges that the trial judge began attending the same church as the victim during the trial and then returned to his previous church when the trial concluded. *Id.* [doc. #17, p. 6–7].

"The Due Process Clause requires 'a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'" *Harris v. Cain*, Civ. No. 5-1994, 2006 WL 378329, at *6 (E.D. La. Feb. 13, 2006) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–905 (1997)). "Therefore, to establish a claim of judicial bias, a petitioner must demonstrate that [the] judge was actually biased against him or had an interest in the outcome of his particular case." *Id.*

Once again, Petitioner does not offer any evidence to substantiate his claim. He alleges that the local newspaper reported that the trial judge began attending M.B.'s church but does not attach the article as an exhibit or offer any other proof as to its existence. Conclusory allegations do not raise a constitutional issue in a habeas proceeding. *Ross*, 694 F.2d at 1012. Further, even if the trial judge attended M.B.'s church, there is no evidence that he was personal friends with her

20

or her family or gained any knowledge of the case outside the bounds of the courtroom.  Therefore, this claim fails.

> 4.  *Medical Records, the Victim's Testimony, and Photographs All Demonstrate that Petitioner is Innocent*

Petitioner's final claim challenges the legal sufficiency of the evidence to secure his conviction.  He argues that "he was able to establish, from the very beginning, that he is innocent." [doc. #17, p. 7–9].

A claim of insufficient evidence is a mixed question of law and fact, which the Court must review under Section 2254(d)(1).  *Davila v. Davis*, 650 F. App'x 860, 866 (5th Cir. 2016) (citing *Miller v. Johnson*, 200 F.3d 274, 281, 286–88 (5th Cir. 2000)).  Thus, the Court must determine whether the Louisiana Second Court of Appeals' rejection of Petitioner's claim that the evidence was insufficient "was an objectively unreasonable application of the clearly established federal law" as set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *Davila*, 650 F. App'x at 886.  A habeas court may not substitute its judgment for that of the factfinders; thus, the Court's review of Petitioner's sufficiency of the evidence claim is "twice-deferential."  *Housley v. Vannoy*, No. 5:18-cv-01600, 2021 WL 5104543, at *6 (W.D. La. May 27, 2021) (quoting *Parker v. Matthews*, 567 U.S. 37, 43 (2012) ("twice-deferential" under the standards of *Jackson* and Section 2254)) (internal quotation marks omitted).

"Evidence is sufficient if, viewing it in the light most favorable to the state prosecution, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Jackson*, 443 U.S. at 319).  The Court looks to state law to determine the substantive elements of the crime.  *Id.* (citing *Coleman v. Johnson*, 556 U.S. 650, 654 (2012)).

Petitioner was convicted of aggravated rape pursuant to Louisiana Revised Statute Section 14:42, which, at the time of these events, was defined as follows:

A. Aggravated rape is a rape committed upon a person sixty-five years of age or
older or where the anal, oral, or vaginal sexual intercourse is deemed to be without
lawful consent of the victim because it is committed under any one or more of the
following circumstances:
> (1) When the victim resists the act to the utmost, but whose resistance is
> overcome by force.
> (2) When the victim is prevented from resisting the act by threats of great
> and immediate bodily harm, accompanied by apparent power of execution.
> (3) When the victim is prevented from resisting the act because the offender
> is armed with a dangerous weapon.
> (4) When the victim is under the age of thirteen years. Lack of knowledge
> of the victim's age shall not be a defense.

La. Rev. Stat. § 14:42.

Viewing the evidence in the light most favorable to the prosecution, the State established
each element of aggravated rape.  As the state appellate court recounted, M.B. testified that
Petitioner forced her to have sex with him on multiple occasions while she visited him at his home
when she was between the ages of 8 and 10 years old.  *Bodine*, 257 So.3d at 252; doc. #46, pp. 3–
22.  Three other women testified that Petitioner sexually assaulted them before the age of 10.  *Id*.
The Louisiana Second Circuit Court of Appeal, applying the *Jackson* standard, declined to assess
the weight and credibility of Petitioner's allegations of inaccurate statements made by witnesses.
*Id.* at 254.  In doing so, the court noted that it must "accord great deference to a jury's decision to
accept or reject the testimony of a witness in whole or in part."  *Id.*

Indeed, "a habeas court must defer to the trial court's findings on issues of conflicting
testimony and the weight of the evidence."  *Housley v. Vannoy*, No. 5:18-cv-01600, 2021 WL
5104543, at *6 (W.D. La. May 27, 2021) (citing *Ramirez v. Dretke*, 391 F.3d 691, 695 (5th Cir.
2005)).  Any conflicting inferences and credibility choices must be resolved in favor of the verdict.
*Id.*

In support of his claim, Petitioner alleges that page 1017 of the record shows that M.B.
testified that he did not rape her or molest her, but rather had an "angry encounter with someone

else" and took it out on Petitioner.  [doc. #17, p. 8].  On page 1017 of the record, M.B. is asked by

trial counsel why she accused her grandfather of raping her after he told her multiple times that he

did not.  [doc. #46, p. 18].  She responds:

| | |
|---|---|
| M.B: | Because I had an encounter with a boy and that had brought some feelings and I told my mom. |
| Trial Counsel: | I'm confused.  So there is a boy and you did what? |
| M.B.: | Sir? |
| Trial Counsel: | I'm confused. |
| The Court: | I need [you] to speak up a little bit so we can all understand your answers. Okay? Thank you. |
| Trial Counsel: | My question was why did you allege your grandfather was doing this when he said he didn't and you know he didn't? |
| M.B.: | Because he did. Me and all the girls in there. |
| Trial Counsel: | Are you sure? |
| M.B.: | Yes, sir. |

[doc. #146, p. 18].

Petitioner's allegation is inconsistent with M.B.'s testimony.   Clearly, a reasonable

inference may be drawn from the testimony that M.B. had an encounter with a boy that brought

back feelings from when she was raped by Petitioner, and so she reported it.  Not, as Petitioner

argues, that M.B. accused Petitioner of rape because she was angry over an encounter with a boy.

Regardless, it is not for this Court to reevaluate the credibility of witness statements or the

weight of the evidence.  *Ramirez*, 398 F.3d at 695.  There is no doubt that in light of the testimony

of M.B. and three other victims, the Louisiana Second Circuit Court of Appeals' conclusion that

the *Jackson* standard was satisfied was not unreasonable.  *See Lemons v. Cain*, 339 F. App'x 494,

497 (5th Cir. 2009) (In light of the evidence, state court's conclusion that *Jackson* was satisfied

was not unreasonable).  Therefore, this claim fails.[9]

---

[9] Petitioner makes other conclusory allegations in support of his insufficiency of the evidence claim: (1) that he has documented proof that he is unable to perform sexually, (2) that he has "pictured proof" that the victim lied about the alleged encounters, (3) that the victim testified that the state's investigator coerced her into making the allegations, (4) that he has proof the victim

<u>**Conclusion**</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that the Court **DENY** Petitioner Steve E. Bodine's claims and **DISMISS** his petition, **WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 17th day of February, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

was served with cease and desist letters regarding Facebook posts, (5) that the State unlawfully ordered his wife to testify against him, (6) that the trial judge admitted hearsay evidence, (7) that the trial judge allowed prosecutors to lead witnesses, (8) that the trial judge allowed the victim to change her testimony, (9) the trial judge allowed selection of jurors that were friends with the victim's family, and (10) the trial judge did not poll the jury to determine if the verdict was unanimous. [doc. #17, p. 8–10]. Petitioner does not offer any evidence or support in the record for any of these conclusory allegations, many of which the Court addressed as part of Petitioner's ineffective assistant of counsel claims. Accordingly, none of them support his insufficiency claim. *Ross*, 694 F.2d at 1012.